UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VICTOR V., <br><br>           Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>           Defendant. | CASE NO. 3:20-cv-05651-BAT <br><br> **ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS** |

Plaintiff appeals the ALJ's decision finding him not disabled. He contends the ALJ erred in analyzing several medical opinions and discounting his testimony. Dkt. 18. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is 29 years old, has a limited education, and has worked as a mail sorter. Tr. 24. He applied for benefits in May 2018, alleging disability as of September 10, 2017. Tr. 18. After conducting a hearing in June 2019, the ALJ issued a decision in July 2019 finding Plaintiff not disabled. Tr. 32-60, 18-26. In pertinent part, the ALJ found Plaintiff's severe impairments of glaucoma, depression, and anxiety limited him to work with occasional interactions with others,

1  no teamwork or direct public service, no fast-paced work, no hazards, and only simple,

2  occasional changes.  Tr. 20, 22.

**DISCUSSION**

This Court may reverse the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole.  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).

**A.   Medical Opinions**

While the parties dispute the standard of review for discounting medical opinions, the Court need not address the dispute because the ALJ found persuasive all medical opinions at issue here.  Plaintiff contends the ALJ erred by failing to incorporate into the RFC all limitations in medical opinions he found persuasive.

**1.   Philip Vannoy Gibson, Ph.D.**

Dr. Gibson examined Plaintiff in July 2018 and opined Plaintiff "would have difficulty accepting instructions from supervisors[,] interacting with coworkers and the public[, and] dealing with the usual stress encountered in the workplace."  Tr. 369.  The ALJ found Dr. Gibson's opinions "persuasive," although "vague."  Tr. 24.

The Commissioner contends the ALJ adequately accounted for Dr. Gibson's social restrictions by limiting Plaintiff to "occasional interactions with others," including supervisors, coworkers, and the public, and prohibiting "tandem or team work" or "direct public service as an essential part of the job."  Tr. 22.  These limitations in addition to prohibiting "fast-paced work" and allowing only "simple, occasional changes" accounted for difficulty dealing with stress.  *Id*.

Plaintiff contends the RFC fails to address specific restrictions on accepting instructions from supervisors and on dealing with stress.  However, the ALJ was not required to copy Dr.

Gibson's opinions word-for-word. *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (an ALJ may incorporate a medical opinion by assessing RFC limitations entirely consistent with, but not identical to, limitations assessed by the doctor). As the Commissioner notes, the ALJ reduced the need for supervisor instruction by limiting workplace changes, which presumably necessitate additional instruction, and limited all supervisor interaction to occasional at most. Dr. Gibson only opined difficulty, not a complete inability to accept instructions. Plaintiff does not identify any additional restriction required by Dr. Gibson's opinions.

Similarly, limitations in the RFC reduce workplace stress by reducing interpersonal interactions and changes in the workplace and prohibiting fast-paced work. Plaintiff identifies no further restrictions required by Dr. Gibson's opinions. Plaintiff argues eliminating fast-paced work accommodates pace deficits, and reducing changes accommodates difficulty dealing with changes. Dkt. 22 at 4. Regardless, these limitations also reduce workplace stress—such as the stress of being required to work quickly, the stress of dealing with change, and the stress of dealing with other people—and thus address Dr. Gibson's opinions. Plaintiff has accordingly not shown error.

The ALJ reasonably translated Dr. Gibson's opinions into concrete restrictions in the RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (upholding ALJ's "translat[ion]" of claimant's condition into "concrete restrictions" where "consistent with the restrictions identified in the medical testimony"). The Court concludes the ALJ did not err in analyzing Dr. Gibson's opinions.

### 2. State Agency Physicians William Nisbet, M.D., and Dennis Koukol, M.D.

On initial consideration, Dr. Nisbet opined Plaintiff had limited near and far acuity and therefore should avoid hazards. Tr. 71-72, 85-86. On reconsideration, Dr. Koukol opined only limited far acuity and concurred with the need to avoid hazards. Tr. 102-04, 118-20. In formulating the RFC, the ALJ accounted for their opinions by prohibiting hazards. Tr. 22. Plaintiff's bare assertion that the ALJ did not account for limited near and far acuity does not establish error. Dkt. 18 at 5-6. The Court concludes the ALJ did not err in analyzing Dr. Nisbet's and Dr. Koukol's opinions.

### 3. State Agency Psychologists Dan Donahue, Ph.D., and Christmas Covell, Ph.D.

On initial consideration, Dr. Donahue opined Plaintiff was "[m]oderately limited" in the ability to interact appropriately with the public but could interact "on an occasional/superficial basis." Tr. 88. He could have "occasional contact" with supervisors and coworkers. Tr. 87. On reconsideration, Dr. Covell agreed with Dr. Donahue's opinions. Tr. 105, 121. The ALJ found their opinions persuasive and accounted for them by limiting Plaintiff to "occasional interactions with others," including supervisors and coworkers, by prohibiting "direct public service as an essential part of the job." Tr. 22. Plaintiff fails to show error. The Court concludes the ALJ did not err in analyzing Dr. Donahue's and Dr. Covell's opinions.

## B. Plaintiff's Testimony

Plaintiff testified he experiences complete loss of vision two to four times per week, for "a couple hours to almost an entire day," despite complying with prescribed medication. Tr. 40-41. The ALJ discounted Plaintiff's testimony because his treatment was conservative and infrequent, he was repeatedly noncompliant with treatment, his activities conflicted with his testimony, and medical opinions did not support his testimony. Tr. 23. Lack of supportive

medical opinions was not a clear and convincing reason to discount Plaintiff's testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("lack of medical evidence cannot form the sole basis for discounting pain testimony"); *cf. Stubbs-Danielson*, 539 F.3d at 1175 (medical opinions supported the ALJ's credibility determination only "[i]n addition" to other clear and convincing reasons).

Plaintiff contends the ALJ failed to account for his lack of insurance in finding noncompliance with recommended treatment and infrequent treatment. *See, e.g.*, Tr. 377 ("No meds … due to no insurance."), 306 (eye doctor no longer accepts his insurance). An "unexplained or inadequately explained failure" to seek treatment or follow prescribed treatment can be a valid reason to discount a claimant's testimony, but an ALJ must consider a claimant's proffered reasons. *Trevizo*, 871 F.3d at 679-80. The ALJ did not address the lack of insurance. The Commissioner argues Plaintiff "had his eye drops and [had] not been compliant in taking them as ordered." Dkt. 21 at 6. The treatment note cited, however, states only that Plaintiff missed a dose of one of his two eye medications "last night" so he used it in the morning. Tr. 381. This does not show ongoing noncompliance. The only other treatment note the Commissioner cites states Plaintiff was using his eyedrops regularly but then "started to forget to take them." Tr. 328. However, this note was from November 2016, well before Plaintiff's alleged onset date. The Commissioner argues "the record does not show that he sought low-cost alternatives," but the ALJ made no such finding. Dkt. 21 at 5. The ALJ did not address the lack of insurance at all. The ALJ erred by discounting Plaintiff's testimony based on noncompliance and infrequent treatment without considering Plaintiff's lack of insurance.

The ALJ also erred by rejecting Plaintiff's testimony based on conservative treatment without identifying any further treatment one would expect for his conditions. An ALJ may

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 5

properly discount claimant testimony when the record shows the claimant "responded favorably to conservative treatment," but here there is no indication Plaintiff's vision loss responded favorably to treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008). The Commissioner argues Plaintiff's "ophthalmologists and optometrists reported that his eye drops controlled his intraocular pressure," but the cited notes do not indicate eye drops eliminated Plaintiff's episodes of vision loss. Dkt. 21 at 4. In fact, while one provider suspected vision loss was linked to intraocular pressure, another suspected it was related to migraines. Tr. 383, 438. Other notes the Commissioner cites indicate providers ordered medication changes or further testing, which do not support the ALJ's finding of successful conservative treatment. Tr. 316, 383, 415, 438. Plaintiff's provider "informed [him] there is no surgery to reverse vision loss due to glaucoma." Tr. 402. Contrary to the Commissioner's argument, lack of surgery does not show Plaintiff's "providers agreed that medication management and conservative treatment were sufficient to manage his impairments." Dkt. 21 at 5. Rather, even surgery would not alleviate his impairments.

Finally, the ALJ erred by discounting Plaintiff's testimony based on his activities. The ALJ cited watching television, going on walks, hiking, cooking, camping, and playing video games. Tr. 23 (citing Tr. 224). However, on the same page Plaintiff described those hobbies, he also stated he only does them "as oft[e]n as [he is] able due to vision," which "used to be frequently" but is not any longer. Tr. 224. There is no indication Plaintiff's activities contradicted his testimony. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."). The Commissioner argues Plaintiff reported he cared for his fiancé and her younger brother, but the only caretaking activities Plaintiff described

were "run[ning] her a bath" and "mak[ing] something to eat" on occasions when his fiancé was "not feeling well." Tr. 223. The ALJ did not cite these extremely minimal activities, and thus the Court cannot rely on this *post hoc* rationalization.

The Court concludes the ALJ erred by discounting Plaintiff's testimony without a clear and convincing reason.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED,** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall reevaluate Plaintiff's testimony, reassess the RFC and develop the record as appropriate, and proceed to steps four and five as necessary.

DATED this 25th day of March 2021.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge